USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____________
DATE FILED: 1/27/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

VLADIMIR ZISKIND, ET AL.,

Defendants.

---

18-CR-375 (VSB)

**ORDER**

VERNON S. BRODERICK, United States District Judge:

As the parties are aware, sentencing of Defendant Keith Orlean ("Orlean" or "Defendant Orlean") is scheduled in this matter for Thursday, January 30, 2020, at 2:30 p.m. I have completed my initial review of the Presentence Investigation Report ("PSR"), the defense sentencing submission, and the Government's sentencing submission. Based upon that review, it is hereby:

ORDERED that the parties shall provide the following requested documents prior to sentencing and shall be prepared to discuss/answer the following topics and questions either at sentencing or prior to sentencing:

1. How did Defendants identify who to target with their cold calls and manipulative sales tactics?
2. Paragraph 55 of the PSR lists the victims of Defendants' fraud.
    a. When did Defendants initially contact each of the victims listed in paragraph 55?

   b. What were the ages of the victims listed in paragraph 55 of the PSR when they were contacted by Defendants?

3. Paragraph 95 of the PSR states "Mrs. Orlean believes that her husband was acting out of desperation and put his trust in the wrong people. She advised that her husband's intentions are always good, and he never wants to let anyone down . . . She believes that, in this case, Orlean wanted to keep things going for the shareholders, and always conferred with attorneys because he was concerned with following the rules and regulations. Mrs. Orlean believes that his codefendant convinced him to follow the wrong path."
   a. Why did Mrs. Orlean believe her husband was desperate?
   b. Did Orlean confer with about "following the rules and regulations."?
   c. If Orlean contacted attorneys, is there any evidence in the record the attorneys provided advice related to the fraud scheme?
4. What happened to the proceeds of the sale of 25 Pheasant Run Lane, Dix Hills, New York?
5. Was there a mortgage on 25 Pheasant Run Lane, Dix Hills, New York?
6. How did Defendants meet? How did the charged conspiracy form?
7. Pages 2 and 3 of the Government's sentencing submission documents a call on April 2, 2018 between Defendant Orlean and Defendant Ziskind.
   a. Please produce the entire transcript of this call.
   b. Please provide additional context for this call.
8. Paragraph 30 of the PSR states: "From intercepted calls between ZISKIND and KEITH ORLEAN, it was learned that ORLEAN agreed to make calls to potential

investor-victims himself. ORLEAN adopted the alias 'Jack Allen' for this purpose. During an intercepted call on April 17, 2018, ORLEAN referred to 'Jack Allen' as 'my stage name.'"

a. Provide the transcript of the calls referenced in paragraph 30.

b. What, if anything, led to Orlean "agree[ing] to make calls to potential investor-victims"?

c. Did Defendant Orlean make any calls to potential investor-victims?

9. Footnote 2 on page 6 of the defense submission it states: "Notably, our discussion of Mr. Orlean's addition to debiting and participation in Debtors Anonymous is in no way provided as an excuse for his criminal conduct, which involved a conspiracy to actively defraud investors. Instead, it supplies some explanation and context for Mr. Orlean's desperation in the solicitation of funds – to cover mounting business debts and keep Digital Donations and Digital Processing Solutions afloat."

a. What evidence is there of "mounting business debts"?

b. What evidence is there that Defendant Orlean was desperate?

c. What evidence is there that Defendant Orlean used any of the proceeds of the fraud scheme to pay "business debts"?

10. Are the individuals who wrote letters on Defendant Orlean's behalf aware of the nature of his criminal conduct?

11. The defense submission argues that Defendant Orlean should receive a probationary sentence, in part, because he "has unconditionally accepted

responsibility for his criminal conduct, with counsel being instructed to immediately negotiate a guilty plea upon being retained in this case".

a. Has not Defendant Orlean been given credit for accepting responsibility?

b. Do not all defendants who plead guilty pursuant to a standard plea agreement with the Government "unconditionally accept[] responsibility"?

c. What is the basis for the argument that Defendant Orlean is entitled to additional credit for his acceptance of responsibility?

12. On page 7 of the Government's sentencing submission it states: "the Court's sentence must account for the fact that Orlean's questionable business practices date back to at least 2007, *see* PSR ¶ 80, and developed into a criminal conspiracy spanning at least three corporate entities and a period of years."

a. Is there any connection between Defendant Orlean's conduct in 2007 and his participation in the instant offense? Stated differently, what is the basis for the claim that Defendant Orlean's questionable business practices in 2007 "developed into" the instant offense?

b. Does the Government have evidence of other "questionable business practices" by Defendant Orlean?

SO ORDERED.

Dated: January 27, 2020
New York, New York

Vernon Broderick

Vernon S. Broderick
United States District Judge